Filed 1/24/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JASON DITZIAN et al.,<br><br>        Plaintiffs and Respondents,<br>v.<br>STEVE UNGER,<br><br>        Defendant and Appellant. | A152946<br><br>(Mendocino County<br>Super. Ct. No. SCTMCVG16-67625) |

Appellant Steve Unger (appellant) and respondents Jason and Lauren Ditzian (respondents) own neighboring parcels in Mendocino County. The scenic sand dunes of MacKerricher State Park are behind the parcels, and respondents historically accessed the dunes via a path that runs along the parties' property line, then crosses appellant's property, and then crosses the parcel of another neighbor. In October 2015, appellant erected a fence that blocked respondents' access to the dunes via the property line path. Respondents brought suit and the trial court granted respondents a prescriptive easement allowing them and their invitees (including Airbnb guests) to use the path. Among other things, appellant contends the easement is a public easement prohibited by Civil Code section 1009.[1] We affirm.

BACKGROUND

In June 2016, respondents filed suit against appellant, seeking to establish a prescriptive easement allowing them to cross appellant's parcel on a path leading to MacKerricher State Park. Respondents' complaint alleged that in October 2015 appellant

---

[1] All undesignated statutory references are to the Civil Code.

constructed a fence along the parties' property line that blocked access to the state park. The complaint alleged respondents had acquired a prescriptive easement through "open, notorious, continuous, and adverse" use of the path for "an uninterrupted period of five years" by themselves and the predecessor owners of respondents' property.

At trial in April 2017, respondents first called appellant as an adverse witness. He bought his Mendocino property in 2006. At the time, Jack and Hyla Bolsta (the Bolstas) owned the property now owned by respondents; Anna Moody is another neighbor. Appellant acknowledged the Bolstas had accessed the state park dunes by crossing his property. It was also necessary to then cross the parcel owned by Ms. Moody to reach the dunes.

Aharon Bolsta, the son of the predecessor owners, testified on respondents' behalf. His parents purchased the Mendocino property in 1998 or 1999. He first visited the property in 1999, and thereafter visited at a "minimum three times a year, sometimes up to five times a year. The holidays, birthdays, whenever I could visit from the Bay Area." He usually stayed for three or four days, and he also lived there from May to October/November 2000 and from July to November 2011. When he visited his parents used the path to the dunes that crossed appellant's property "[a]lmost every day."[2] The Bolstas were friends with the prior owner of appellant's property, Romana Downie. The Bolstas moved from the property in around 2013. Aharon Bolsta's parents were deceased at the time of trial.

Respondent Jason Ditzian testified he bought the Bolstas' property in 2013. Mr. Ditzian, who was friends with Aharon Bolsta, began coming to the Bolstas' Mendocino property in summer 2008. From 2008 to 2013, he visited the Bolstas two or three times a year. During those visits, he would take the path across appellant's property to the dunes, either by himself or with the Bolstas. Following purchase of the property from the

---

[2] Before 2006 there was another path on the side of the property bordering Ms. Moody's parcel, and the Bolstas would use both paths to access the dunes. The other path was blocked by a fence in roughly 2006, and the Bolstas exclusively used the path along the property line with appellant thereafter.

Bolstas, he lived there part time between February and May 2013, and he lived on the property full time between May 2013 and summer 2016.

Jason Ditzian testified that in September or October 2015, while he and Lauren were on their honeymoon, appellant built a fence that blocked the path providing access to the dunes from respondents' parcel. Previously, Mr. Ditzian had never encountered any obstructions to using that path to the dunes, he had never seen any "no trespassing" signs, and he had never been told he could not use the path.

Respondent Lauren Ditzian testified she married Jason in September 2015.[3] She lived on the Mendocino property full time from May 2014 through the summer 2016, and has visited about once a month since then. When she lived on the property (and during previous visits to the property), she used the path to the dunes across appellant's land "[s]everal times a week," until appellant put up a fence. Previously, she had encountered no obstacles and had never been told she could not walk on the path, either the part crossing appellant's land or the part crossing Ms. Moody's parcel.

Beginning in July 2015, respondents began hosting vacation renters at their Mendocino property through Airbnb. By the time of trial, 146 separate Airbnb reservations had been made. In September 2016, respondents were cited by the Mendocino County Department of Planning & Building Services for not having a permit to have paying overnight guests at their property. Respondent Jason Ditzian testified he was remedying the situation and the County was aware respondents continued to have Airbnb guests.

Appellant presented the testimony of the prior owner of his parcel, Romana Downie. She continued to reside on the parcel, after sale to appellant in 2006. Ms. Downie testified she and her husband built a path to the dunes in 1991. This is *not* the path that is the subject of the easement at issue in the present case, which runs along the property line. The path they built was "somewhere in the middle of the property;" she

---

[3] Jason Ditzian had not yet met Lauren when he purchased the Bolstas' property. She is listed as a co-owner on the grant deed recorded with Mendocino County in January 2016.

3

knew nothing about a path running "along the boundary line of [her] property." Ms. Downie told the Bolstas they could use the path she and her husband built.

The trial court issued a detailed ruling finding in favor of respondents. After describing the evidence presented at trial, the trial court found respondents had made the showing required to establish a prescriptive easement on a path leading to the dunes along the parties' property line. Among other things, the court "credit[ed] the testimony of Aharon Bolsta that both he and his parents regularly traversed the subject path dating as far back as 1998." Reflecting on a site visit to respondents' Mendocino property, the trial court observed, "Hiking out to the dunes is the greatest highlight of living on or visiting the property. Enjoyment of that natural resource is presumably why the parties bought the property in the first place. It would be more startling and unexpected if no one ever bothered to hike out to the dunes on a regular basis." The court also observed the path was "very evident" and "well-trodden," and it was "obvious[]" the path had long been used to access the dunes. The court also rejected other contentions made by appellant, including that section 1009 precluded formation of an easement, that the Airbnb rentals substantially increased the burden of the easement, and that the doctrine of unclean hands justified denial of the requested easement.

In September 2017, the trial court entered judgment in favor of respondents, granting them "an easement along the pathway which originates on their land and traverses that of defendant along the boundary line between the two properties." The judgment specified that the easement extended to "[respondents], personal invitees, and business invitees, but only while such business invitees are residing on the property." The present appeal followed.

## DISCUSSION

"The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 (*Warsaw*).) "Whether the elements of a prescriptive easement have been established is a question of fact, which we

4

review under the substantial evidence rule. [Citation.] . . . Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.' " (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 449.)

Appellant's primary contention on appeal is that section 1009, which provides that the public's use of another's property for recreational purposes will never ripen into a vested right, prevented respondents from acquiring a prescriptive easement. Appellant also presents several other claims of error. We reject all of appellant's contentions and affirm the trial court's judgment.

I.     *Appellant's Claim Based on Section 1009 Fails*

Section 1009 provides that, because it is "in the best interests of the state to encourage owners of private real property to continue to make their lands available for public recreational use," and because owners who allow "members of the public to use, enjoy or pass over their property for recreational purposes" risk loss of the property rights, "no use of such property by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use . . . ."[4] Appellant argues the prescriptive

---

[4] Section 1009 provides in relevant part: "(a) The Legislature finds that: [¶] (1) It is in the best interests of the state to encourage owners of private real property to continue to make their lands available for public recreational use to supplement opportunities available on tax-supported publicly owned facilities. [¶] (2) Owners of private real property are confronted with the threat of loss of rights in their property if they allow or continue to allow members of the public to use, enjoy or pass over their property for recreational purposes. [¶] . . . [¶] (b) . . . [E]xcept as otherwise provided in subdivision (d), no use of such property by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof in the manner prescribed in subdivision (c) of this section, which has been accepted by the county, city, or other public body to which the offer of dedication was made, in the manner set forth in subdivision (c)."

5

easement granted by the trial court is effectively a public easement prohibited by section 1009.

The Third District rejected a similar argument in *Pulido v. Pereira* (2015) 234 Cal.App.4th 1246 (*Pulido*), disapproved on other grounds in *Scher v. Burke* (2017) 3 Cal.5th 136, 150, footnote 5. There, neighboring property owners sought to establish an easement for access to their properties over land owned by the appellant. (*Pulido*, at p. 1248.) Because the property owners used their properties for recreational purposes, the appellant argued section 1009 prohibited the creation of a prescriptive easement. (*Pulido*, at p. 1251.) The *Pulido* court explained the Legislature, in passing section 1009, "intended to encourage landowners to allow recreational use of their land without the threat of the public obtaining an interest in the property as a result of the use." (*Pulido*, at p. 1252.) *Pulido* concluded section 1009 did not apply "because there is no question of public use. Rather, this is a matter of a private prescriptive easement between neighboring landowners." (*Pulido*, at p. 1252.)

The *Pulido* court distinguished *Bustillos v. Murphy* (2002) 96 Cal.App.4th 1277, disapproved on other grounds in *Scher v. Burke* (2017) 3 Cal.5th 136, 150, footnote 5, relied upon by appellant in the present case. (*Pulido*, *supra*, 234 Cal.App.4th at pp. 1252–1253.) In *Bustillos*, as summarized by *Pulido*, "Bustillos and others used an undeveloped property that was adjacent to a residential development for recreational purposes. [Citation.] The undeveloped property was owned by Murphy. [Citation.] Bustillos argued he was entitled to a private easement . . . . [The court held] that Bustillos's interest was indistinguishable from the public generally, thus he could not claim a private easement." (*Pulido*, at p. 1252.) The *Bustillos* court reasoned, "The effect of granting a prescriptive easement in this case would mean that Bustillos, as well as other members of the public, would gain a permanent right to use Murphy's property for recreational purposes. There is nothing 'private' about the prescriptive easement sought here or anything to distinguish Bustillos's situation from that contemplated by section 1009." (*Bustillos*, at p. 1281.)

6

In distinguishing *Bustillos*, the *Pulido* court stated, "This case is unlike *Bustillos* because the Pulidos' interest in the easement across Pereira's property is entirely distinguishable from the interest of the public generally. The Pulidos seek a right of way easement to access their own property. That makes their interest distinguishable from the interest of the public at large. They are not merely passing through Pereira's property because it provides access to a public recreational area." (*Pulido*, *supra*, 234 Cal.App.4th at pp. 1252–1253.)

The present case is not identical to *Pulido*, because respondents *do* seek an easement over appellant's property to gain access to a public recreational area. However, appellant is mistaken in asserting that "neither [respondents] nor their paying guests ' "have any use or interest in the property that is distinguishable from the public generally." ' " (Quoting *Bustillos*, *supra*, 96 Cal.App.4th at p. 1281.) As in *Pulido*, respondents' interest is distinguishable from the interest of the general public. The trial court found respondents acquired a prescriptive easement, as owners of the neighboring property, due to the use by themselves and their predecessors of the path over appellant's land. Although the trial court's judgment does not specify the nature of the easement, it is plainly an easement "appurtenant" to respondents' property. (See *Committee to Save Beverly Highlands Homes Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1269 ["An easement appurtenant to the land is 'attached to the land of the owner of the easement, and benefits him as the owner or possessor of that land.' "].)[5]

---

[5] "Easements may be appurtenant or in gross." (12 Witkin, Summary of Cal. Law (11th ed. 2017) Real Property, § 397, p. 456; see also 6 Miller & Starr, Cal. Real Estate (4th Ed. 2018) Easements, §§ 15:6-15:8, pp. 15-24 to 15-36.) "In considering extrinsic evidence of the nature of an easement, courts may consider the type of rights conveyed and the relationship between the easement and other real property owned by the recipient of the easement. [Citation.] As an illustration, [treatise authors] suggest that where a roadway easement provides access to a particular parcel of real property a court may infer the easement is appurtenant to that parcel." (*Moylan v. Dykes* (1986) 181 Cal.App.3d 561, 569.) "The second rule, of judicial origin, is that an easement will not be interpreted as being in gross if it may fairly be interpreted as being appurtenant." (*Ibid.*) In the present case, the easement's obvious benefit to respondents' property and respondents' reliance on the predecessor owners' use demonstrates that the easement is appurtenant to

7

In contrast, the easement in *Bustillos* was plainly personal (or "in gross"), and there was nothing preventing other similarly situated members of the public from making the same prescriptive easement claim.  (See *Moylan v. Dykes*, *supra*, 181 Cal.App.3d at p. 568 ["An easement in gross, unlike an appurtenant easement, is merely a personal right to use the land of another.  [Citation.]  It does not pass with the land."].)  Because *Bustillos* involved a fundamentally different kind of easement, the concern in that case that the easement was similar to grant of an easement to the public is not present here.[6]

Section 1009 did not prohibit the trial court from awarding the prescriptive easement in the judgment.

II.    *Appellant's Remaining Contentions Are Without Merit*

Appellant contends the trial court erred in "establishing a 'partial' easement" because respondents were not also awarded an easement over Ms. Moody's property, which they needed to cross to reach the dunes after crossing appellant's land.  However, appellant cites nothing in the record showing that Ms. Moody had blocked or objected to respondents crossing her land.  Appellant presents no reasoned argument why respondents were required to seek simultaneous recognition of an easement over Ms. Moody's property in these circumstances.

Appellant argues respondents should not have been granted an easement permitting their Airbnb guests to cross his land.  He asserts that "the trial court erred in interpreting evidence of the [respondents'] own 'personal' use of the footpath as proof establishing prescriptive rights for their paying guests."  However, as we have explained, the easement granted by the trial court is appurtenant to the land.  Appellant cites no

_____

the land.  (See *Eastman v. Piper* (1924) 68 Cal.App. 554, 567–568 ["Whenever the right in question is in its nature an appropriate and useful adjunct of the land owned by the grantee of the easement, having in view his intention as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it will be held to be an easement appurtenant and not in gross."].)

[6] We express no opinion as to whether in the proper case an individual could obtain a prescriptive easement in gross based on an interest distinguishable from the interest of the public generally.

8

authority that persons paying to stay on a property benefitting from such an easement—whether long-term tenants or vacation renters—cannot use the easement.  Neither has appellant shown the easement grants respondents, as they assert, "a monopoly on 'public access' to the dunes and the Pacific Ocean at this entryway."  Access by respondents and their invitees is *not* public access.

Furthermore, appellant has not demonstrated that allowing Airbnb guests to use the easement imposes "a substantial increase or change of burden on the servient tenement."  (*Bartholomew v. Staheli* (1948) 86 Cal.App.2d 844, 850.)  The record supports the trial court's finding that "the incremental increased burden . . . is modest" and "consistent with the pattern formed by the adverse use by which the prescriptive easement was created."  (Cf. *Bartholomew*, at p. 851 [the defendants' easement to travel a roadway did not "entitle them to invite large numbers of the members and patrons of their nudist colony, the summer resort, dining room and store, to travel the private roadway to patronize those commercial enterprises"]; *LeDeit v. Ehlert* (1962) 205 Cal.App.2d 154, 165–166 [terms of "easement in gross" did not permit owner of easement to "take paying guests over appellants' land"].)  Appellant emphasizes the potential for a large number of *annual* Airbnb visitors, but the trial court reasonably focused on whether the easement itself would see substantially increased use, observing that "[t]he salient issue is whether having a couple other people residing on the property from time to time transforms the scope of the easement and the burden it imposes on the servient tenement."[7]

Appellant has not shown the trial court abused its discretion (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110) in declining to award respondents an easement on the basis of the unclean hands doctrine.  He argues respondents illegally hosted numerous Airbnb guests before applying for a vacation rental permit in October 2016.  But "[t]he unclean hands rule does not call for denial of relief to a plaintiff guilty of any past improper conduct; it is only misconduct in the particular transaction or connected with

---

[7] This decision does not preclude a future action should the use of the easement substantially exceed the use at issue in the present case.  (See *Bartholomew v. Staheli*, *supra*, 86 Cal.App.2d at pp. 850–851.)

the subject matter of the litigation which is a defense. [Citation.] The bar applies only if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants." (*Wilson v. S.L. Rey, Inc.* (1993) 17 Cal.App.4th 234, 244.) Because respondents' failure to obtain a permit before hosting Airbnb guests is not directly connected with the prescriptive easement claim, the trial court did not abuse its discretion in rejecting the unclean hands defense.

Finally, appellant argues the trial court erred in concluding the use of the property line path was adverse in light of the testimony by Romana Downie that she gave respondents' predecessors permission to use a *different* path across her land. The argument fails. Appellant cites no authority that permission to use one path constitutes permission to use a different path, and appellant cites no evidence respondents were given permission to use the path at issue in the present case.[8] And appellant, who was the owner after 2006, cites no evidence *he* gave respondents or the Bolstas permission to cross his property on any path. Moreover, contrary to appellant's assertion, respondents were not required to present evidence they actually communicated their easement claim to appellant or Ms. Downie. (*Warsaw*, *supra*, 35 Cal.3d at pp. 571–572 ["[C]ontinuous use of an easement over a long period of time without the landowner's interference is presumptive evidence of its existence and in the absence of evidence of mere permissive use it will be sufficient to sustain a judgment."]; *Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1253 ["continuous use over a long period of time constitutes communication of the claim of right"].)[9]

---

[8] For the first time in his reply brief appellant argues there was insufficient evidence of continuous use of the contested path over his property. Appellant's argument is untimely. (*Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9.) In any event, the trial court could reasonably infer from the testimony of Aharon Bolsta that his parents walked the path on a near-daily basis after 2006, based on his observations of their habits during his periodic visits and periods of residence at the Mendocino property. Furthermore, respondents testified to their regular use of the path.

[9] The case appellant relies on, *Case v. Uridge* (1960) 180 Cal.App.2d 1, is inconsistent with the Supreme Court's decision in *Warsaw*, *supra*, 35 Cal.3d at page 572. (See *Aaron v. Dunham*, *supra*, 137 Cal.App.4th at p. 1253 [pointing out that another case, if read to

DISPOSITION

The trial court's judgment is affirmed.  Costs on appeal are awarded to respondents.

---

include an express communication requirement, is inconsistent with *Warsaw*]; *MacDonald Properties, Inc. v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 701 [pointing out pre-*Warsaw* split in authority].)  There is some debate as to whether evidence of ongoing use merely "establishes an *inference* that the use was adverse and hostile," rather than a "*presumption* of adversity."  (6 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 15:32, p. 15–132.)  But, even if evidence of use does not establish a presumption, it is clear such evidence can support an inference of adversity.  (See *Grant v. Ratliff* (2008) 164 Cal.App.4th 1304, 1309 ["*Warsaw* stands for nothing more than that the open, notorious and continuous use of another's land is sufficient evidence to support a finding that the use was adverse.  Not to be presumptive, we think the discussion of presumption was at best dictum."].)

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BURNS, J.

(A152946)

Superior Court of Mendocino County, No. SCTMCVG16-67625, Hon. Clayton L. Brennan, Judge.

Michael P. Scott for Defendant and Appellant.

Jason Ditzian and Lauren Ditzian, in pro. per., for Plaintiffs and Respondents.