Filed 4/13/22  Giordano v. Knuthson-Loomis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| DAVID R. GIORDANO, as Trustee, etc., et al., | C094036 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. 18CV03568) |
| v. | |
| MERLE KNUTHSON-LOOMIS, | |
| Defendant, Cross-complainant and Appellant. | |

This case involves a real property dispute between two landowners in rural Butte County.  Plaintiffs David R. and Elizabeth G. Giordano, as trustees of the D & E Giordano Revocable Family Trust (collectively, plaintiffs), filed an action to quiet title to a prescriptive easement to use a dirt road/trail that traverses defendant Merle Knuthson-Loomis's (defendant's) property.  Plaintiffs claimed that they had used the road openly, notoriously, adversely, and continuously for many years, as it was the only practical

1

means for them to access their own adjoining properties.  Defendant opposed their request for a prescriptive easement, arguing that because the public uses the road for recreational purposes, Civil Code section 1009[1] prevents plaintiffs' use of the road from ripening into a private prescriptive easement.  Defendant also cross-complained for trespass damages and to quiet title to a disputed boundary line.

After a bench trial, the trial court granted plaintiffs a prescriptive easement, resolved the boundary line dispute in plaintiffs' favor, and denied defendant's trespass cause of action.  Defendant timely appealed.  We shall affirm the portions of the judgment granting a prescriptive easement and denying the trespass claim, but reverse and remand for retrial of the boundary line dispute.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs own the following parcels of land near the town of Magalia in rural Butte County:  APN 066-470-030 (a 10-acre parcel); APN 066-470-019 (a 4-acre parcel); APN 058-130-027 (a 50-acre parcel); and APN 058-130-019 (a 120-acre parcel).  Plaintiffs purchased the 120-acre parcel and the 10-acre parcel in 1990, the 4-acre parcel in 1993, and the 50-acre parcel in 2004.  Three of plaintiffs' parcels border a portion of property owned by defendant (APN 066-470-011).

Defendant's property is several acres in size and is configured (roughly) in the shape of an "L."  The base of the "L" is oriented in an east-west direction and straddles a public road known as New Skyway.  The portion of defendant's property extending east of New Skyway is a relatively narrow strip of land that is surrounded by plaintiffs' 10-acre parcel to the north, plaintiffs' 4-acre parcel to the south, and plaintiffs' 120-acre parcel to the east.

There is a narrow dirt road that extends east from the New Skyway road down the mountainside to the Feather River.  Since at least the 1990's the public has used the road

---

[1]     Undesignated statutory references are to the Civil Code.

2

for recreational purposes, including as a route to access the west branch of the Feather River. Although most of the road is located on plaintiffs' properties, due to the steep terrain, the road crosses over defendant's land three times as it weaves its way down the mountain. Plaintiffs claim that the road passing over defendant's land is the only practical way for them to access their properties on the western side of the Feather River, and so they have used the road to access the properties since the early 1990's.

In the spring of 2018, defendant discovered plaintiffs operating a bulldozer on the road and attempted to block the road by hanging "wire lines with red ribbons" where the road crosses her property. Shortly thereafter, in October 2018, plaintiffs filed a complaint to establish a prescriptive easement across defendant's property. Defendant answered the complaint and filed a cross-complaint for quiet title and declaratory relief to confirm her right, title, and interest in her property. Among other things, she prayed for a "judicial determination of [her] north property boundary." Defendant also sought to recover damages against plaintiffs for trespassing on her property and damaging the roots of her trees with their bulldozer.

### A. *Plaintiffs' case*

The trial court held a bench trial on August 27 and 28, 2020. At trial, plaintiffs presented testimony and other evidence to establish that they had openly, notoriously, adversely, and continuously used the road that traverses defendant's parcel for an uninterrupted period of time exceeding 20 years. Plaintiffs testified that they had used the road two to ten times per year since 1993. They testified that they used the road to access their properties, and for commercial/business reasons, but not for recreational purposes. All the trips were made during daylight hours. Plaintiffs annually mowed the grass, cleared brush, and performed other maintenance to keep the road open and usable. Defendant never gave plaintiffs permission to use the road. David Giordano testified that in 1990, he asked defendant's brother—who owned the property at the time—for permission to cross the property. Defendant's brother refused, but plaintiffs continued to

3

use the road anyway. Plaintiffs claimed that no action was taken to interrupt their use of the road until 2018, when defendant put wires across the road with ribbons attached.

As to the location of the proposed easement, Timothy Giordano, plaintiffs' expert surveyor (hereafter, Giordano),[2] testified that he inspected and surveyed the road to produce a map and legal description of its center line.[3] During the course of his investigation, Giordano reviewed the map and survey records for the various parcels owned by plaintiffs and defendant. He testified that he plotted the north-south boundaries between plaintiffs' parcels and defendant's parcel based upon his "in-office review" of prior survey records, primarily, the Lippincott Surveying record of survey (120 M 30) for plaintiffs' 10-acre parcel (defendant's exhibit C) and the L&L Surveying record of survey (131 M 16) for plaintiffs' 4-acre parcel. In plotting the boundary for the four-acre parcel, he also considered the Magalia Community Church record of survey (124 M 89) (defendant's exhibit F). He testified that he consulted with the county surveyor to confirm that the earlier surveys could be relied upon to determine boundary locations, but he did not attempt to locate the monuments, corners, or lines of the various parcels in the field. He testified that he was not aware of, and did not consider, a 1978 Lippincott Surveying record of survey (64 R/S 31) (defendant's exhibit B) showing the northern boundary of defendant's property, or a 1955 decree quieting title to defendant's property (defendant's exhibit K).

Giordano's plot of the metes and bounds of defendant's parcel did *not* match the legal description in defendant's deed. For example, according to defendant's deed, the strip of land extending east of the New Skyway road is approximately 114 feet wide

---

[2]    Timothy Giordano is plaintiff David Giordano's cousin.

[3]    Plaintiffs' exhibit 1 is the declaration of Timothy Giordano filed August 18, 2020, which has five attachments (A through E). We shall refer to those attachments as plaintiffs' exhibits 1-A through 1-E.

4

(north to south). In contrast, Giordano's plot shows that defendant's strip of land is, at its widest spot, only about 45 feet wide (as depicted on plaintiffs' exhibits 1-C and 1-D). As a result, there was a significant discrepancy regarding the location of the boundary between the properties.

In response to defendant's trespass cause of action, plaintiffs testified that their bulldozer did not damage defendant's trees and, in any event, the trees were killed by the 2018 Camp Fire.

B.      *Defendant's case*

Defendant presented two arguments against plaintiffs' prescriptive easement cause of action. First, she claimed that plaintiffs' use of the road was not sufficient to warrant a prescriptive easement. In particular, she complained that plaintiffs' use of the road was too infrequent, sporadic, and indistinguishable from the public to impart notice that plaintiffs were asserting an adverse claim of right over her land. Second, defendant claimed that because the public is allowed to use the road for recreational purposes, section 1009 bars any use by plaintiffs from ripening into a prescriptive easement.

Brien Hamilton, defendant's surveying expert, provided testimony regarding the boundaries of the parties' properties. He testified that he physically located the actual location of the monuments, corners, and lines for the properties and used these markers to prepare a preliminary record of survey for defendant's property (defendant's exhibit J).[4] He testified that, based on his survey, the boundary between the two properties was consistent with the deed for defendant's property (defendant's exhibit E); the 1955 predecessor deed for defendant's property (803 O.R. 569) (defendant's exhibit K); the 1955 decree quieting title to defendant's property (defendant's exhibit G); and the 1978

---

[4]      Hamilton acknowledged that his proposed record of survey was merely a preliminary draft, that he had not finished the surveying work to complete it, and that it had not been submitted to the Butte County surveyor for review.

5

Lippincott Surveying record of survey (64 R/S 31) of the northern boundary of defendant's property (defendant's exhibit B). He further testified that Giordano's plot of the boundaries of defendant's property (as depicted in plaintiffs' exhibits 1-D and 1-E) did not reflect the actual location of the monuments, corners, and lines for the parties' properties.

In support of the trespass claim, defendant presented evidence that her trees were damaged *before* the Camp Fire. She argued that it made no difference whether the Camp Fire killed the trees because the damage occurred before the fire. She presented expert testimony on the cost to remove and replace the damaged trees ($103,485.87).

C.      *The trial court's decision*

After trial, the court issued a statement of decision (1) granting plaintiffs' request for a prescriptive easement; (2) resolving the boundary line dispute in plaintiffs' favor; and (3) denying defendant's trespass claim. The trial court entered judgment on March 9, 2021. Defendant timely appealed the judgment.

DISCUSSION

I

*Section 1009*

Defendant contends that the trial court erred in granting plaintiffs a prescriptive easement because, as a legal matter, section 1009 prevented their use of the road from ripening into an easement. We disagree.

We begin our analysis with the principles of law governing prescriptive easements. A prescriptive easement is similar in many respects to a claim of adverse possession, but the doctrines are not identical. (*Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1261.) Whereas a successful claimant by adverse possession gains title to the property, the holder of a prescriptive easement gains only a nonpossessory and restricted right to a specific use or activity upon another's property. (*Ibid.*; *Moylan v. Dykes* (1986) 181 Cal.App.3d 561, 568 (*Moylan*).)

6

Easements may be either appurtenant or in gross. (*Moylan, supra*, 181 Cal.App.3d at p. 568.) An appurtenant easement attaches to the land of the easement holder (the dominant tenement) and benefits the holder as the owner or possessor of that land, while burdening the land of another (the servient tenement). (*Ibid.*; *Ditzian v. Unger* (2019) 31 Cal.App.5th 738, 745 (*Ditzian*).) In contrast, an easement in gross exists independently of the ownership or possession of any specific land, and is merely a personal right to use the land of another. (*Ditzian, supra*, at p. 745; *Redevelopment Agency v. Tobriner* (1984) 153 Cal.App.3d 367, 375, fn. 1.)

" 'The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years.' [Citation.]" (*Pulido v. Pereira* (2015) 234 Cal.App.4th 1246, 1250 (*Pulido*), overruled in part on other grounds in *Scher v. Burke* (2017) 3 Cal.5th 136, 150, fn. 5 (*Scher*).) Whether the elements of a prescriptive easement are established is a question of fact and the findings of the court will not be disturbed where there is substantial evidence to support them. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570.)

Here, the trial court found that plaintiffs proved the elements to establish a prescriptive easement, and defendant does not challenge the sufficiency of the evidence supporting that finding. Instead, defendant argues that section 1009 barred plaintiffs' use of the road from ripening into a prescriptive easement.

Section 1009 is intended to prevent use of private property by members of the public from ripening into a vested right. It was enacted in the wake of *Gion v. City of Santa Cruz* (1970) 2 Cal.3d 29, in which our Supreme Court held that an implied dedication to the public may arise when the public freely and openly uses private property for public recreation purposes for a period longer than the prescriptive period of five years. (*Id.* at pp. 39-44.)

7

Subdivision (b) of section 1009, which applies to noncoastal private property, provides that "whether or not a private owner of real property has recorded a notice of consent to use . . . or has posted signs on such property . . . , no use of such property by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof . . . ." (§ 1009, subd. (b), see also subd. (e).)

Defendant interprets section 1009, subdivision (b) to mean that if the public uses a road on private noncoastal property for recreational purposes, no use of the road—public or private—may ever ripen into an easement. We disagree with defendant's construction of the statute.

The proper interpretation of a statute is a legal issue, which we review de novo. (*Pulido, supra*, 234 Cal.App.4th at p. 1251.) As in any case involving statutory construction, our fundamental task is to ascertain the Legislature's intent to effectuate the purpose of the law. (*Ibid*.) We begin by examining the statutory language. (*Ibid*.) " 'If the terms of the statute are unambiguous, we presume the lawmakers mean what they said, and the plain meaning of the language governs.' " (*Ibid*.)

The plain language of section 1009, subdivision (b) states that no public use of private property can ever ripen to confer "*upon the public or any governmental body*" a vested right to continue such public use permanently. (§ 1009, subd. (b), italics added.) By its terms, the statute applies only to implied dedications for public use and public prescriptive easements. It has no application in cases involving claims of *private* prescriptive easements between neighboring landowners. (*Pulido, supra*, 234 Cal.App.4th at p. 1252 ["section 1009 does not apply here because there is no question of public use. Rather, this is a matter of a private prescriptive easement between neighboring landowners"]; see also *Ditzian, supra*, 31 Cal.App.5th at pp. 743-746

8

[section 1009 does not prevent landowner from obtaining a private prescriptive easement to cross neighbor's property to access public recreation land].)

The prescriptive easement at issue here was private and appurtenant to plaintiffs' property. Plaintiffs did not seek a public easement to gain access to a public recreational area; they sought to establish a private easement to access their own adjoining property. Thus, section 1009 did not operate to prevent plaintiffs' private use of the road from ripening into a private prescriptive easement.

Defendant's reliance on *Scher, supra*, 3 Cal.5th 136 is misplaced. In *Scher*, the California Supreme Court held that section 1009 bars all public uses, not just public recreational uses, from ripening into an implied public dedication. (*Scher*, at pp. 143-148.) The court did not hold, as defendant suggests, that any time the public uses private property for recreational purposes, section 1009 prohibits any use of that property from ripening into a private prescriptive easement.

Decisional law establishes that section 1009 does not prevent a neighboring landowner from acquiring a private prescriptive easement over property merely because it also is used by the public. (*Ditzian, supra*, 31 Cal.App.5th at pp. 743-746; *Pulido, supra*, 234 Cal.App.4th at pp. 1252-1253; see *Gion v. City of Santa Cruz, supra*, 2 Cal.3d at pp. 39-44 [distinguishing public dedications from private prescriptive easements]; *Scher, supra*, 3 Cal.5th at p. 146 [same]; see also *O'Banion v. Borba* (1948) 32 Cal.2d 145, 151 [merely because the public also uses property does not preclude the acquisition of a right based upon an individual's own use]; *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 710 [same].) Accordingly, we reject defendant's claim that section 1009 operated to bar plaintiffs' use of the road from ripening into a prescriptive easement.

## II

### *Trespass*

Our resolution of the prescriptive easement cause of action also disposes of defendant's argument that the trial court erred in denying her trespass claim.

9

"A [t]respass is an *unlawful* interference with possession of property." (*Girard v. Ball* (1981) 125 Cal.App.3d 772, 788, original italics.) An easement, in contrast, gives the holder the right to use the property of another. (*Moylan, supra*, 181 Cal.App.3d at p. 568; *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1306.) Thus, as defendant acknowledges, an action for trespass may not be maintained where the person has acquired an easement over the property for the use in question because it defeats one of the elements of the cause of action, i.e., the lack of permission for the entry. (*Kapner v. Meadowlark Ranch Assn.* (2004) 116 Cal.App.4th 1182, 1189 [tenant in common cannot trespass on commonly owned property]; *McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1174 [nonexclusive easement holder cannot state a trespass claim against the property's owner]; see also 75 Am.Jur.2d (Feb. 2022) Trespass, § 66 ["Since the essence of trespass is the invasion of a person's interest in the exclusive possession of land, the action may not be maintained where the person has acquired an easement over the land in question"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group, Oct. 2021) Claims and Defenses, ¶ 11:886 ["If a defendant sued for trespass has been using plaintiff's land in a way that meets the criteria for prescriptive easement . . . , no action lies for trespass. This is because a trespass is an invasion of the exclusive possession of land as by entry upon it."].)

Since we affirm the trial court's grant of a prescriptive easement to plaintiffs', defendant's challenge to the trespass claim necessarily fails.

III

*Boundary Dispute*

Defendant's final argument relates to the boundary line dispute raised in her cross-complaint. Defendant contends the trial court erred in relying on Timothy Giordano's testimony to establish the location of the disputed boundary. Defendant argues that the law requires boundary line disputes to be decided based upon the "location of the boundary monuments, lines and corners as actually laid out on the ground." Because

10

Giordano determined the boundary between plaintiffs' and defendant's parcels based solely upon an "in-office review" of survey records, without attempting to locate the monuments, corners, or lines in the field, defendant argues that Giordano's opinion was not sufficient to establish the location of the disputed boundary. We agree that the trial court's determination of the boundary line dispute must be reversed because its findings are not supported by substantial evidence.[5]

"Under California law, the location of a disputed boundary line is proven by retracing, as nearly as possible based upon existing evidence, the footsteps of the original surveyor whose survey fixed the boundaries. [Citations.]" (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 736-737 (*Bloxham*).) "The location of the monuments placed in connection with the original survey is of 'primary importance.' " (*Id*. at p. 742.) This is so because the original government survey does not merely ascertain boundaries, it creates them. (*Fripp v. Walters* (2005) 132 Cal.App.4th 656, 662; *Phelps v. Pacific Gas & Electric Co.* (1948) 84 Cal.App.2d 243, 247.)

" '[W]hen lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, and descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself.' " (*Phelps v. Pacific Gas & Electric Co., supra*, 84 Cal.App.2d at p. 247.) The grantee takes only such land as is included within the survey of the plot conveyed and cannot later question the survey as erroneous, even if the line in question should have been placed elsewhere. (*Ibid*.) While the government may resurvey its land to correct an erroneous survey, and in doing so may locate boundaries in new and

---

[5]     As there does not appear to be any dispute about the location of the center line of the road for purposes of the prescriptive easement, our discussion is limited to the dispute over the boundary between the properties.

11

different places, it may not affect the rights of those who have acquired an interest in lands with reference to the original survey. (*Id*. at p. 248.)

It follows that an official survey of the government cannot be impeached by a collateral attack in an action between private parties to determine title to land. (*Fripp v. Walters, supra*, 132 Cal.App.4th at p. 661.) The boundaries established by the original government survey are unchangeable and must control any disputes. (*Id*. at p. 663.) Any subsequent survey undertaken by a private party must " ' "take care to observe and follow the boundaries and monuments as run and marked by the original survey." ' " (*Ibid*.)

When a court is confronted with a boundary dispute, it is not the province of the court to determine where the monuments, corners, or lines should have been fixed in the original government survey. (*Chandler v. Hibberd* (1958) 165 Cal.App.2d 39, 55 (*Chandler*).) "Their positions, as set, fix the rights of the parties, regardless of the inaccuracy of the measurements and the errors in distance found in the field-notes." (*Id*. at p. 56.) " '[T]he question presented to the court . . . is not that of making a resurvey but one of determining as a question of fact . . . the actual location of the monuments, corners or lines as actually laid out on the ground by the official surveyor.' [Citation.]" (*Bloxham, supra*, 228 Cal.App.4th at p. 737.)

" 'The questions where the line run by a survey lies on the ground, and whether any particular tract is on one side or the other of that line, are questions of fact. [Citation.]' [Citation.]" (*Bloxham, supra*, 228 Cal.App.4th at p. 737.) We review the trial court's factual findings for substantial evidence. (*Id*. at p. 739.)

In general, the testimony of a single witness, including an expert witness, may be sufficient to constitute substantial evidence. (*Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 314.) However, " ' "[t]he chief value of an expert's testimony . . . rests upon the *material* from which his opinion is fashioned and the *reasoning* by which he progresses from his material to his conclusion; . . . it does not lie

12

in his mere expression of conclusion." ' " (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 83, original italics.)  "Our substantial evidence review must include a critical examination of the material upon which the experts based their conclusions in order to determine whether that material provides substantial support for those conclusions." (*Ibid.*)  " 'When a trial court has accepted an expert's ultimate conclusion without critical consideration of [the] reasoning, and it appears the conclusion was based upon improper or unwarranted matters, then the judgment must be reversed for lack of substantial evidence.' [Citation.]" (*Ibid.*)

Here, the trial court based its boundary line decision solely upon Giordano's expert testimony.  In its statement of decision, the trial court found it "clear from the testimony of Timothy Giordano that the boundary lines as depicted on [plaintiffs' exhibits 1-D and 1-E] were consistent with his survey as well as prior surveys confirmed by the Butte County Surveyor."  The court found that the survey work performed by defendant's expert, Brien Hamilton, "was not complete and was a preliminary survey at best."  Based on these findings, the court concluded that the boundary lines of the portion of defendant's parcel extending east from the New Skyway road were consistent with plaintiffs' exhibits 1-D and 1-E.  In other words, the court treated its decision as a classic battle of the experts based upon conflicting surveys.

But Giordano's testimony established that he did not actually survey the properties.  Although he testified that he surveyed the center line of the road to determine the location of the proposed easement, he admittedly never attempted to locate the monuments, corners, or lines for the properties (as actually laid out on the ground) because "that was beyond the scope of [his] work."  Instead, he plotted the property boundaries based on his "in-office review" of certain survey records, namely, the

13

Lippincott Surveying record of survey (120 M 30), the L&L Surveying record of survey (131 M 16), and the Magalia Community Church record of survey (124 M 89).[6]

Only defendant's expert, Hamilton, surveyed the properties and located the relevant monuments, corners, and lines as actually laid out on the ground. And he testified that the boundary lines depicted on plaintiffs' exhibits 1-D and 1-E did *not* reflect the actual location of the monuments, corners, and lines that he found in the field. There was no competent evidence introduced to rebut his testimony.[7] Thus, the trial court erred in treating Giordano's plot map (as depicted on plaintiffs' exhibits 1-D and 1-E) as a "survey" that could be relied upon to establish the property boundaries.[8] (Bus. & Prof. Code, §§ 8762, 8763 [describing record of survey]; see *Saunders v. Polich* (1967) 250 Cal.App.2d 136, 140-142 [failure to locate markers or monuments established by official government plat or field notes rendered survey insufficient]; accord, *Bloxham, supra*, 228 Cal.App.4th at pp. 739-740.)

---

[6]     Given this evidence, it is not surprising that Giordano's plot of the boundary lines was "consistent" with the "prior surveys," since that is precisely what he set out to do: create a plot of the boundaries based on those surveys. But he could not know whether those prior surveys were accurate and reliable because he never performed his own retracement survey to check the prior surveyors' work.

[7]     We do not find Giordano's (hearsay) statement that he "consulted" with the county surveyor about prior surveys to be substantial evidence that those surveys could be relied upon to resolve this particular boundary dispute.

[8]     We do not mean to suggest that a retracement survey by a professional surveyor necessarily is required for every boundary dispute. (*Chandler, supra*, 165 Cal.App.2d at p. 55.) But it is settled law that the location of a disputed boundary is proven first by retracing, as nearly as possible, the footsteps of the original surveyor who fixed the boundaries, since the location of the monuments is of primary importance. (*Bloxham, supra*, 228 Cal.App.4th at pp. 736-737, 742; see also Code Civ. Proc., § 2077; *Chandler*, at p. 55 [where the markers of the original survey have been destroyed, secondary evidence as to their relocation is admissible].)

Moreover, even if Giordano's map accurately depicts the relevant boundaries, his testimony merely established that there is a conflict between defendant's property boundaries (based on the prior survey records) and the legal description in defendant's deed. His testimony does not explain why that conflict exists or why it should be resolved in plaintiffs' favor. We can only speculate why a map based on survey records prepared in the 1990's should prevail over the legal description in a deed, which has remained unchanged since the 1950's. In light of the whole record, we conclude that Giordano's opinion was insufficient to support the trial court's finding that the true boundary lines between the properties are as depicted in plaintiffs' exhibits 1-D and 1-E.

Beyond this, our own review of the record has revealed another reason that the court's judgment must be reversed: It is internally inconsistent. In its statement of decision, the court found that the boundary lines of the portion of defendant's property extending east of the New Skyway road are as depicted in plaintiffs' exhibit 1-E. Consistent with the statement of decision, the judgment denied defendant's cross-complaint and granted plaintiffs an easement as described in plaintiffs' exhibit 1-E, which was attached to the judgment as "Exhibit 'C.' " However, the judgment also simultaneously provides that defendant is the "owner of Assessor Parcel Number 66-47-11 [as] more particularly described in Exhibit 'B' attached hereto and made a part of this Judgment." Exhibit B contains the legal description from defendant's deed, which, as discussed above, is not consistent with the property boundaries described in plaintiffs' exhibit 1-E. Accordingly, the judgment does not clearly settle the boundary dispute. A person reading the judgment would be unable to ascertain whether defendant owns the property as described in her deed (attached and incorporated into the judgment as exhibit B) or as described in the easement (attached and incorporated into the judgment as exhibit C).

For these reasons, we shall reverse the portion of the judgment purporting to grant judgment in favor of plaintiffs on defendant's cross-complaint and remand this matter to

15

the trial court for retrial of defendant's cause of action to quiet title to the property boundary.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The portions of the judgment (1) granting plaintiffs a prescriptive easement for ingress and egress across defendant's property; and (2) denying defendant's trespass cause of action, are affirmed. The portions of the judgment pertaining to the property boundary dispute are reversed and remanded for retrial, with directions for the trial court to (1) determine on retrial the location of defendant's property boundaries and thereafter enter a judgment quieting title to her land within the boundaries so established; and (2) make any necessary conforming changes to the prescriptive easement based on the resolution of the boundary dispute. The parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

                                                               KRAUSE _____, J.

We concur:

_____ HOCH _____, Acting P. J.

_____ EARL _____, J.