[Civ. No. 24189. Third Dist. May 27, 1986.]

JAMES MOYLAN et al., Plaintiffs and Respondents, v.
DAVID DYKES et al., Defendants and Appellants.

562

564

**COUNSEL**

Robert Eli for Defendants and Appellants.

Berliner & Spiller, Steven T. Spiller and Holly Kraemer for Plaintiffs and Respondents.

## OPINION

**SIMS, J.**—In this case we conclude a road easement reserved in a deed may be appurtenant to a parcel of real property the easement does not touch.

Defendants David and Barbara Dykes appeal from a judgment enjoining them from interfering with plaintiffs James Moylan, Eldred Koehn-Hoffman, and Caroline Niemann's use of an easement across their (defendants') land. The judgment also awarded each plaintiff $3,975 plus interest as damages for defendants' obstruction of the easement.

Defendants contend: (1) plaintiffs do not have an easement on their land based on record title; (2) defendants' motion for judgment on the pleadings should have been granted because plaintiffs' complaint alleged a gap in their legal title to the easement; (3) the easement cannot be sustained on theories of adverse possession or implication; and (4) there was no evidentiary basis for the award of damages.

We conclude plaintiffs' easement is established by record title; we need not consider theories of easement by implication or adverse possession. Defendants' other contentions are without merit. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves several adjoining parcels of largely undeveloped land in the foothills of Nevada County. The land, in the vicinity of Casa Loma Road, is traversed by seasonal streams and logging roads.

All the land in question was originally owned by John Antonowitsch. In June of 1967 Antonowitsch sold a portion of the land to Herbert Courtney. Courtney's land abutted Casa Loma Road on the north (see figure 1, *post*). In 1970 Courtney desired to sell the northern portion of his property with road access and retain a portion of his property to the south. Apparently, access to the southern portion of Courtney's property was via a road leading through Antonowitsch's parcel. Courtney testified that, to preserve his access to the southern portion of his land, he and Antonowitsch deeded each other easements for ingress, egress and utilities through their parcels. Courtney granted Antonowitsch a 9-course easement leading from Casa Loma Road to Antonowitsch's parcel; in exchange Antonowitsch granted Courtney a 4-

course easement leading from the 9-course easement to the southern portion of Courtney's property. These deeds were recorded on September 15, 1970, in preparation for Courtney's sale of his northern parcels.

On September 15, 1970, following recordation of the easements, Courtney sold his northern property, known as parcels 31, 32, and 33, to defendants David and Barbara Dykes. In order to preserve his own access from Casa Loma Drive, Courtney retained in his deed to defendants a 9-course easement identical to the one he had granted Antonowitsch. The deed described the easement as "an easement 60.00 feet in width for ingress, egress and utility purposes. . . ." The easement is not designated as appurtenant to Courtney's southern property nor designated as an easement in gross.

Courtney testified at trial that, although he had reserved the easement across the western portion of defendants' parcel for access to his property to the south, he did not recall discussing the need to reserve an easement over parcel 32 to provide access from Antonowitsch's easement to his southern parcel. Courtney explained he relied on his real estate broker to put the transaction together properly. (See figure 2, *post.*)

On January 20, 1971, Courtney sold his southern property to Jonathan Taylor. Courtney's deed to Taylor does not mention any easements. Taylor later subdivided his parcel into three parcels designated as A, B and C. (See figure 3, *post.*)

On March 12, 1971, Taylor conveyed his parcel C to plaintiff Moylan. In order to provide Moylan access to his property Taylor granted him an easement over his parcels A and B to the north. Apparently, Taylor's deed to Moylan also purported to grant Moylan an easement over defendants' parcel 32 to the north of Taylor's parcel A. However, as noted above, Courtney never reserved such an easement in his deed to defendants and defendants never granted such an easement to Taylor. Moreover, the purported easement over defendants' parcel 32 is misdescribed so that, even assuming it were valid, it would not connect to the Antonowitsch easement.

Moylan subsequently subdivided his property into parcels A, B, C, and D. (See figure 4, *post.*)

Moylan's four parcels are now referred to as parcels 59, 60, 61, and 62. Moylan conveyed parcels 59 and 61 to others; those parcels are not involved in this litigation. Taylor's parcels A and B are now owned by plaintiffs Koehn-Hoffman and Niemann. Defendants' parcel 32 is now owned by Wendy Hansen. Hansen was named as a defendant in this lawsuit but she

filed a disclaimer of any interest adverse to plaintiffs' easement and judgment was entered against her establishing plaintiffs' easement. That judgment was final as of the date of trial in this case.

Defendants' sale of parcel 33 to Scott and Leblanc evidently failed, as did defendants' sale of parcel 31 to Leavitt. Defendants own parcels 31 and 33. The Antonowitsch parcel is now owned by William and Elizabeth George.

The current owners of the various parcels are indicated on figure 5, *post.*

In June of 1979 Moylan, Niemann, and Koehn-Hoffman filed this action against the Dykes, the Antonowitsches, and Hansen to establish their right to use the entire easement from Casa Loma Drive to the Moylan property. The complaint was subsequently amended to substitute the Georges for the Antonowitsches. Each of the defendants filed disclaimers of any interest adverse to the easement. On January 7, 1980, judgment was entered for plaintiffs.

In June of 1980 defendants Dykes constructed a fence across the easement, obstructing its use. On June 3, 1980, the Dykes noticed a motion to vacate the judgment as to them pursuant to Code of Civil Procedure section 473; that motion was ultimately granted. As to the remaining defendants the judgment is now final.

In its present form, the litigation concerns only defendants Dykes' right to restrict use of the 9-course easement across their own land, parcels 31 and 33. On February 15, 1983, plaintiffs filed a supplemental complaint for damages for loss of use of the easement.

In its statement of decision (incorporating by reference its tentative decision) the trial court considered Courtney's reservation of the 9-course easement in his deed to defendants. The trial court found the easement was intended to be appurtenant to Courtney's southern property including that now owned by plaintiffs. The trial court noted that the easement as reflected in the Courtney-Dykes deed did not physically touch Courtney's southern property; however, it determined that fact was immaterial. The trial court concluded plaintiffs' easement was established by record title; it did not consider whether the easement could be established by adverse possession or by implication. Judgment was entered as noted above and defendants timely filed notice of appeal.

## DISCUSSION

### I

Defendants' principal contention is that the trial court erred in concluding plaintiffs' right to use the 9-course easement across defendants' land was established by record title. We conclude the trial court was correct.

### A

We begin with some fundamentals of the law of easements. ■ An easement is an incorporeal interest in the land of another which gives its owner the right to use another's property or to prevent the use of property by its owner. (3 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1977) Easements, § 18:4, p. 252.) The land to which the easement attaches is called the dominant tenement; the land to which the burden or servitude is imposed is called the servient tenement. (Civ. Code, § 803; *Cushman* v. *Davis* (1978) 80 Cal.App.3d 731, 735 [145 Cal.Rptr. 791]; 3 Miller & Starr, *op. cit. supra,* § 18:5, p. 254.)[1]

■ Easements are classified as appurtenant or in gross. (§ 801; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 521 [67 Cal.Rptr. 761, 439 P.2d 889].) ■ The basic effect of the distinction between easements appurtenant and easements in gross arises when the owner of an easement conveys his property. The conveyance of the dominant tenement transfers all appurtenant easements to the grantee, even though the easements are not specifically mentioned in the deed. (§§ 1084, 1104; 3 Miller & Starr, *op. cit. supra,* § 18:5, p. 256.) ■ An easement in gross, unlike an appurtenant easement, is merely a personal right to use the land of another. (3 Miller & Starr, *op cit. supra,* § 18:6, p. 257.) ■ It does not pass with the land.

■ Generally, the determination of whether an easement is appurtenant or in gross is made by reference to the instrument creating it. (3 Miller & Starr, *op. cit. supra,* § 18:7, p. 258.) However, in this case, as often happens, the instrument itself (the Courtney-Dykes deed) is deficient because it fails to specify whether the easement is in gross or appurtenant and fails to identify a dominant tenement. (See *id.,* at p. 258.) Moreover, the character of the easement as appurtenant or in gross cannot be determined by the nature of the rights granted because easements for right of way ("ingress and egress") may be either appurtenant or in gross. (*Ibid.*)

---

[1]Statutory references are to the Civil Code unless otherwise indicated.

■■■■■■■■■
■■■■■■■■■■

When a court is called upon to determine whether an easement is appurtenant or in gross, it applies the general rules relating to the interpretation of deeds. (3 Miller & Starr, *op. cit. supra,* § 18:7, p. 258.) In most cases, "Grants are to be interpreted in like manner with contracts in general . . . ." (§ 1066; *Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 521.)

In interpreting incomplete or ambiguous deeds, courts may consider extrinsic evidence of the circumstances under which the deed was made. (*Katz, supra,* 68 Cal.2d at p. 522; see § 1647; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) """"As stated in *Wright* v. *Best,* 19 Cal.2d 368, at page 383 [121 P.2d 702]: '. . . when the deed does not expressly declare an easement to be appurtenant, or when the language of the deed is ambiguous, and it does not clearly appear whether an easement was intended to be in gross or appurtenant to land, evidence *aliunde* the document is admissible to determine the nature of the easement and to establish a dominant tenement. [Citations.]'"""" (*Katz, supra,* at p. 523, quoting *Schofield* v. *Bany* (1959) 175 Cal.App.2d 534, 536-537 [346 P.2d 891].)

In considering extrinsic evidence of the nature of an easement, courts may consider the type of rights conveyed and the relationship between the easement and other real property owned by the recipient of the easement. (3 Miller & Starr, *op. cit. supra,* § 18:7, p. 259; see *Elliott* v. *McCombs* (1941) 17 Cal.2d 23, 27-30 [109 P.2d 329].) As an illustration, Miller and Starr suggest that where a roadway easement provides access to a particular parcel of real property a court may infer the easement is appurtenant to that parcel. (3 Miller & Starr, *op. cit. supra,* at p. 259.)

Courts also employ two rules of particular concern here. The first rule, of statutory origin, is that "a reservation in any grant, . . . is to be interpreted in favor of the grantor." (§ 1069; *Martin* v. *Lloyd* (1892) 94 Cal. 195, 203 [29 P. 491]; 2 Miller & Starr, *op. cit. supra,* § 14:52, p. 580.) The second rule, of judicial origin, is that an easement will not be interpreted as being in gross if it may fairly be interpreted as being appurtenant. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 523; *Elliott* v. *McCombs, supra,* 17 Cal.2d at p. 29; 3 Miller & Starr, *op. cit. supra,* § 18:7, p. 260.)

B

■■ With these general principles in mind we turn to the facts of this case. As we have noted, the deed from Courtney to Dykes did not indicate whether Courtney's reserved easement across Dykes' land was in gross or

appurtenant. A fortiori, the deed did not identify a dominant tenement to which the easement was appurtenant. Thus, the deed presented a lacuna which the trial court was entitled to bridge by resort to rules of construction and extrinsic evidence. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 523.)

 The trial court had before it several items of extrinsic evidence. The first was Courtney's testimony at trial. Courtney testified he discussed with his real estate broker the need to retain an easement in order to preserve access to his southern property.

The second item of extrinsic evidence was the exchange of easements between Courtney and Antonowitsch immediately prior to Courtney's conveyance to defendants. That exchange of easements was intended to preserve, inter alia, Courtney's access to his southern property. This is revealed through Courtney's admittedly general testimony coupled with the fact, evident from the maps, *post,* that Courtney's *northern* property was directly accessible without traversing an easement; his southern property, conversely, was dependent on the easement for access. At the time of the Courtney-Antonowitsch agreement, the easement across Antonowitsch's property ended, at its southernmost point, at the southern portion of Courtney's property and was therefore contiguous to that property. (See figure 1, *post.*) The Courtney-Antonowitsch agreement was recorded before Courtney's sale of three parcels to defendants. Since Courtney did not own the Antonowitsch parcel, and since he was conveying his northern parcels to defendants, there was only one logical reason for his retention of an easement across defendants' property: to allow access from his southern parcel, which he retained, to Casa Loma Drive. By defendants' construction, Courtney's easement across their property fails to provide access to any land owned by Courtney. This construction is patently unreasonable. (See *Elliott* v. *McCombs, supra,* 17 Cal.2d at pp. 29-30.)

Finally, an existing road located within the metes and bounds of the easement traversed Courtney's northern property. The road led through Antonowitsch's property and then through Courtney's parcel 32 to the south. Although a 10-foot section of the road was washed out where it traversed a seasonal stream, the continuation of the road on the other side of the stream was visible. The road's presence would reasonably suggest to a purchaser that the easement was for the purpose of maintaining the right to use the existing road.

Defendants contend the extrinsic evidence shows they did not intend to accept an easement appurtenant to Courtney's retained property. Defendants

note they never met Courtney since the entire transaction was handled through a real estate broker. The essence of defendants' argument is that they intended the easement to be personal because there is no evidence they agreed to purchase the property subject to an easement appurtenant.

However, defendants did not testify that they understood Courtney's easement was in gross or that it was appurtenant to some parcel other than Courtney's retained southern parcel. Defendant David Dykes testified he never discussed the question of easements with Courtney, Antonowitsch, Taylor or the real estate broker before receiving the deed. He further testified he looked at the deed when he got it. Conspicuously absent from Dykes' testimony is any statement as to his understanding of the scope or purpose of the easement reserved in the deed.

Georgia Dykes also testified at trial. It is unclear whether she is grantee "Barbara" Dykes identified in the deed from Courtney. In any event, even assuming arguendo Georgia and Barbara are the same person, she did not testify as to her understanding of the scope or purpose of the reserved easement.

In this evidentiary setting—where the grantor testified as to his understanding of the easement and where the grantees failed to produce evidence of their contrary understanding—there can be no doubt that the trial court correctly resolved the scope and nature of the easement. "[W]hen the language of a deed is ambiguous, and it does not clearly appear whether the easement was intended to be in gross or appurtenant to land, it is never construed as personal when it may fairly be construed as appurtenant . . . ." (*Elliott* v. *McCombs, supra,* 17 Cal.2d at p. 29; see *Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 523.) Here, it did not "clearly appear" from the deed that the parties intended the easement to be of a particular character. Under these circumstances, the trial court could properly find the easement to be appurtenant. (*Ibid.*) ■ Moreover, such a finding is supported by section 1069's directive that reservations in grants are to be construed in favor of the grantor. Under section 1069, Courtney's 9-course reservation of easement is properly construed in favor of plaintiffs as his successors in interest. The trial court did not err in finding the easement appurtenant to Courtney's southern property.

■ Having concluded the 9-course easement was appurtenant to Courtney's southern parcel, the trial court could conclude that plaintiffs, as Courtney's successors in interest, were entitled to enforce the easement. As noted *ante,* conveyance of the dominant tenement transfers all appurtenant

easements to the grantee, even though the easements are not specifically mentioned in the deeds. (§ 1084; 3 Miller & Starr, *op. cit. supra,* § 18:5, p. 256.) Thus, omission of any mention of the easement in the deeds from Courtney to Taylor and from Taylor to plaintiffs is inconsequential.

■ We note that each plaintiff, as successor to a portion of Courtney's southern property, is entitled to enforce the easement. Section 807 provides that "In case of partition of the dominant tenement the burden must be apportioned according to the division of the dominant tenement, but not in such a way as to increase the burden upon the servient tenement." (See *Jordan* v. *Worthen* (1977) 68 Cal.App.3d 310, 327 [137 Cal.Rptr. 282]; *Herbert* v. *Russell* (1969) 1 Cal.App.3d 63, 66-67 [81 Cal.Rptr. 448].) The only limitation on each plaintiff's right to enforce the easement is that the burden on the servient tenement is not thereby increased. (§ 807.) Defendants have not raised the issue of increased burden in this appeal and we do not consider it.

■ Defendants contend the trial court could not properly find the easement appurtenant to the southern property because the Courtney-Dykes deed makes no reference to the dominant tenement to the south; because it merely reserves an easement across the conveyed parcel; because it makes no mention of the easement on the Antonowitsch parcel; and because it does not mention the Courtney-Antonowitsch exchange of easements.

Reduced to its essentials, defendants' argument is that the deed does not reveal the nature of the easement. That, however, is the problem rather than the solution. The trial court properly determined the nature of the easement by looking to extrinsic evidence. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at pp. 522-523.)

II

■ Defendants contend their motion for judgment on the pleadings was erroneously denied because plaintiffs' complaint revealed they had no title to the easement. Defendants rely on *Carlson* v. *Lindauer* (1953) 119 Cal.App.2d 292 [259 P.2d 925] for the proposition that where a pleader undertakes to plead his title specially, as well as generally, and the special allegations reveal he has no title, the general allegation of good title is nullified and the pleader is out of court. (Pp. 301-302.)

Defendants claim plaintiffs' complaint alleged a "gap" in the plaintiffs' title. However, upon examination the "gap" turns out to be not in plaintiffs' *title,* per se, but in the pathway between Casa Loma Drive and plaintiffs' property. What defendants call a "gap in title" is the omission of an easement across parcel 32. (See figure 2, *post.*) To be sure, that "gap" in conveyancing is one item of evidence the trial presumably considered in determining whether the deeded easement was appurtenant to Courtney's southern parcel. However, we are aware of no authority holding that a recorded easement for ingress and egress must actually touch the parcel to which it is appurtenant. That cannot be the law. Assume, for example, in the following hypothetical, that the owner of parcel 1 acquires by deed easements across four separately owned parcels so that he can reach a highway:

If the easements across parcels 3, 4 and 5 are described as appurtenant to parcel 1, can there be any doubt that the law would acknowledge the appurtenance and that a conveyance of parcel 1 would include its appurtenant easement rights across parcels 3, 4, and 5? We think the obvious answer is the law must recognize the appurtenance.[2] Otherwise the owner of parcel 1 would have no way of securing permanent access, conveyable with the parcel. We therefore conclude an easement for ingress and egress reserved in a deed may be appurtenant to a parcel it does not touch.

That being the case, plaintiffs did not plead themselves out of court by alleging a "gap" in recorded easements across parcel 32. At all times during this litigation parcel 32 has been owned by Hansen, not by defendants. (See figure 5, *post.*) Although defendants have standing to complain of plaintiffs' legal right to traverse defendants' property, they have no standing to challenge plaintiffs' right to traverse Hansen's property. That traverse is simply none of defendants' business. Any omission in the record title as to parcel 32 has no effect on title to the remainder of the easement including its traverse of defendants' parcels.[3] Plaintiffs have not pleaded themselves out of court. (*Carlson* v. *Lindauer, supra,* 119 Cal.App.2d at pp. 301-302.)

---

[2]Surely the situation in the hypothetical must occur with some frequency.

[3]As a practical matter, the gap no longer exists because the present owner of parcel 32, Hansen, filed a disclaimer of any interest adverse to such an easement. The case went to judgment against Hansen and the judgment was final as of the date of trial in this case.

## III

■ Defendants lastly contend there was insufficient evidence to support the award of damages to each plaintiff for obstruction of the easement. We disagree.

When a person interferes with the use of an easement he deprives the easement's owner of a valuable property right and the owner is entitled to compensatory damages. The interference is a private nuisance and the party whose rights have been impeded can recover damages as measured in the case of a private nuisance. (3 Miller & Starr, *op. cit. supra,* § 18:58, p. 370; see *Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422, 437-438 [114 Cal.Rptr. 380].) Damages may be recovered for diminution of the property's value and for annoyance and discomfort flowing from loss of use. (*Spaulding* v. *Cameron* (1954) 127 Cal.App.2d 698, 706 [274 P.2d 177]; 3 Miller & Starr, *op. cit. supra,* § 21:14, p. 536.)

In this case each plaintiff testified he or she was denied access to his or her property.

Plaintiff Moylan testified he has not been able to use his property since 1980; he could not "do anything with" it. Plaintiff Neimann testified she asked a real estate agent to view the property for a possible sale but the agent could not gain access to the property. Plaintiff Koehn-Hoffman testified she planned to sell her property in June of 1980 because she needed the income a sale would produce. A planned sale failed because there was no clear access to the property.

Defendants contend plaintiffs suffered no damages because their properties ultimately appreciated in value. Defendants suggest, in effect, that their conduct in rendering plaintiffs' parcels temporarily unmarketable should go uncompensated because plaintiffs' damages are largely intangible. It is true that plaintiffs' damages are "unliquidated and not readily subject to precise calculation" and that the amount thereof is "necessarily left to the subjective discretion of the trier of fact. . . ." (See *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 103 [160 Cal.Rptr. 733, 603 P.2d 1329].) But even if intangible, the damages are no less real. The fact remains that plaintiffs were wrongfully deprived of access to their properties for a period of several years. The trial court fixed plaintiffs' damages at $3 per day. That amount was not excessive. The trial court did not abuse its discretion in assessing plaintiffs' damages as it did. We find no error.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Stroud, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied August 13, 1986.

*Assigned by the Chairperson of the Judicial Council.

Reciprocal easements recorded, September 15, 1970

FIGURE 1

Conveyance of Parcels 31, 32, and 33,
Courtney to Dykes, September 15, 1970

FIGURE 2

Conveyance, Courtney to Taylor, January 20, 1971

FIGURE 3

Erroneous easement
purportedly granted
by Taylor to Moylan

Easement granted
by Taylor to Moylan,
March 12, 1971

Moylan subdivides
into Parcels A, B, C, and D

Conveyance,
Taylor to Moylan,
March 12, 1971

FIGURE 4

Current Owners

FIGURE 5