Filed 5/23/24  MBC Properties v. 611 Catalina Building CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MBC PROPERTIES, INC., et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>611 CATALINA BUILDING, LLC,<br><br>Defendant and Appellant. | B321859<br><br>(Los Angeles County<br> Super. Ct. No. 19STCV42840) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Bice Murphy Law, Brandon C. Murphy, for Defendant and Appellant.

Eric M. Schiffer; ACI Law Group, Jacob B. Bach, for Plaintiff and Respondent MBC Properties, Inc.

No appearance by Plaintiff and Respondent M&C Property Management.

Defendant and appellant 611 Catalina Building, LLC (Catalina) appeals from judgment following a bench trial on the scope of a 1978 Grant of Easement (the Easement) for parking spaces in the City of Los Angeles.  The trial court held the Easement did not require MBC Properties, Inc. (MBC) to reimburse Catalina for its proportionate share of increased property taxes levied against the property due to Catalina's voluntary improvements.  We agree with this interpretation, decline to consider new issues raised by Catalina, and affirm.

## FACTUAL BACKGROUND

The original grantor of the Easement (Manufacturers Life Insurance Company) owned an unimproved parking lot in the City of Los Angeles.  In 1978, the original grantor and original grantees (Larry and Grace Latt) executed the Easement giving the original grantees the right to park 17 vehicles in the lot.  The original grantor retained ownership of the lot (defined as the "servient tenement"), which is comprised of 53 total parking spaces.  By separate deed, the original grantor conveyed other real property (defined as the "dominant tenement") to the original grantees.

The Easement contains an integration clause and declares it will "bind and inure to the benefit" of heirs and successors and assignees of the parties.  At trial, the parties stipulated Catalina is the successor in interest to the original grantor and MBC is successor to the original grantees.[1]

---

[1]     The stipulation did not include plaintiff and Respondent M&C Property Management, LLC (M&C), which has not appeared in this appeal.

2

The parties' dispute concerns the extent to which MBC must reimburse Catalina for certain real property taxes. The dispute implicates two paragraphs in the Easement.

Paragraph six of the Easement, entitled "Taxes & Maintenance on Servient Tenement," requires the original grantees "to pay 17/53rds of all reasonable maintenance costs incurred, including cleaning, restriping and resurfacing and all real property taxes levied against the [servient tenement]. Grantor shall provide Grantee with a bill not more than often than monthly for said expenses and semi-annual bills for taxes . . . and Grantee shall pay same within 15 days of mailing of said bills. . . ."

Paragraph eight of the Easement, entitled "Right to Improve Servient Tenement," reserves the original grantor's "right to improve the [s]ervient [t]enement in any manner allowed by law provided that Grantee shall be entitled to 17 parking spaces in any new improvement, of a similar size and type as those provided [in the Easement]. . . . Any incremental cost per space incurred by reason of the new improvements shall not be borne by Grantee and Grantee shall continue to be responsible only for the same type[ ] of reasonable maintenance costs as would be incurred in connection with the parking lot as it is as of the date of this Grant of Easement." For any period of improvement, the original grantor must provide 17 parking spaces of similar size within a reasonable distance from the dominant tenement.

From the time Catalina purchased the servient tenement in 1995 until 2015, the property remained an unimproved surface lot. In 2015, Catalina began construction of a 57-unit mixed use apartment building. Construction concluded in 2018.

3

Catalina sent MBC yearly invoices beginning in 2009. Each yearly invoice had one entry for "Property tax and maintenance." Between 2009 and 2015, the amount charged on the invoices ranged between $531 and $550 per year. During construction, Catalina agreed to pay MBC $95 dollars per month for lost use of each parking space. Catalina paid MBC for many months but stopped payment in late 2018. Catalina continued to issue yearly invoices for property tax and maintenance in 2015 ($463), 2016 ($480), 2017 ($6,664), 2018 ($21,833), and 2019 ($71,174).

Following construction, in roll year 2018–2019, the county reassessed the servient tenement, valuing the land at $65,826 and improvements at $5,550,000. The county reassessed the servient tenement again the following roll year, valuing the land at $67,142 and improvements at $18,491,000.

## PROCEDURAL BACKGROUND

### A. The Complaints and Answers

The parties filed competing complaints for breach of easement and injunctive and declaratory relief.[2] Both complaints sought a judicial determination of the parties' rights and obligations of reimbursement under the Easement.

Beyond generally denying the allegations in the complaint, Catalina's answer asserted various affirmative defenses, including the "fail[ure] to state facts sufficient to constitute a cause of action . . . upon which relief may be granted" against it.

---

[2] The original complaint, filed by MBC and M&C, alleged MBC granted a subeasement to M&C for seven of its 17 parking spaces. Finding no competent evidence establishing a subeasement, the trial court held M&C had no easement rights or obligations.

4

MBC denied the allegations in the cross-complaint and raised its own defenses not relevant here.

## B.    Trial Proceedings

The matter proceeded to a three-day bench trial.  The parties submitted opening briefs, an original and amended joint exhibit list, and joint witness list.

The trial briefs identified two issues for trial.  The first issue raised by the parties was whether Catalina breached the Easement by failing to pay MBC for lost use of the parking spaces, or by declining to provide alternative parking spaces to MBC, during construction.  As for the second issue, the parties disputed whether the original grantees (and their successors) were required to reimburse the original grantor (and its successors) for 17/53rds of the real property taxes levied against the servient tenement for assessed value *after* voluntary improvements by the servient tenement owner.

The parties provided their own interpretations of the Easement (discussed *post*) and called various witnesses to testify.  Several leaders of MBC testified about its lost use of the spaces and Catalina's partial payments for the spaces during construction.  Frank Nosrati, the sole owner and member of Catalina, testified his "understanding was, and is, that [Catalina] provided an easement for 17 parking spaces to . . . [MBC]."  Nosrati acknowledged Catalina "became the servient tenement when [he] purchased that property" and MBC "became the dominant tenement" when it purchased the land defined as such under the Easement.

At the end of trial, the court admitted various trial exhibits and set a briefing schedule for closing briefs in which the parties

were directed to focus on their "claims and theories." At Catalina's request, the court agreed to issue a written statement of decision.

In its closing brief, MBC argued the integration clause in the Easement precluded any use of extrinsic evidence. Construing paragraphs six and eight of the Easement together, MBC argued any reimbursement obligations for real property taxes "related only to the Easement as it was on the date the easement was created, which was a vacant lot with 53 parking spaces." As 98.8% of the total reassessed value of the servient tenement was attributable to Catalina's voluntary improvement, MBC questioned whether the original grantees would assume one-third of real property taxes "without regard to the extent of construction or the value of improvements to be made, . . . ." Based on the reassessed value ($18.5 million) and rate of interest (1.2% per annum), MBC argued Catalina's interpretation would require it to pay $350 per space every month, a "cost far in excess of prime parking spaces in prime properties" before maintenance costs.

In its closing trial briefs, Catalina argued there were "no technical terms that need explaining, and there [was] no evidence that a special meaning has been given to them by usage over time. It is possible to ascertain the intention of the parties from the writing alone, and that intention is that [MBC] is obligated to pay . . . 17/53[rds] of all reasonable maintenance costs, and 17/53[rds] of all real property taxes levied against the subject real property, in perpetuity." Catalina argued paragraph eight of the Easement provided no guidance on the rights and obligations for reimbursement provided in paragraph six.

## C. The Statement of Decision and Judgment

In April 2022, the court issued a written statement of decision rejecting Catalina's interpretation in favor of MBC. The court found paragraph eight of the Easement reserved the right to improve the servient tenement on the condition any improvement would not impact the grantees' easement rights. In so finding, the court discussed the Easement provisions requiring the grantor to provide alternate parking spaces and excluding from the grantee's reimbursement obligations any increased "incremental cost per space."

The court found the absence of the term "property taxes . . . in paragraph [eight did] *not* weigh in favor of [ ] Catalina, because the [Easement] as a whole expresses a general intention to limit the pass-through of costs to the [g]rantee." In the court's view, any other interpretation would unreasonably afford the original grantor "the right to construct extravagant improvements far beyond the imagination of the parties, then pass along 17/53[rds] of the concomitant tax burden to the [o]riginal [g]rantee . . . without providing any increased benefit to the dominant tenement.[3] Moreover, under the general rule that easements and other grants of real property are to be construed against the grantor and in favor of the grantee, any questions regarding the responsibility for increased taxes due to improvement[s] must be resolved in favor of the [o]riginal [g]rantees and their successor, MBC." The court held MBC's

---

[3] The court touched on this logic later in its decision, noting the significant increase in charged invoices after Catalina's improvement. The court compared pre-construction invoices between 2011 and 2016 (approximately $400 and $500 per year) with post-construction invoices in 2017 ($6,664), 2018 ($21,833), 2019 ($71,174), and 2020 ($74,285).

7

reimbursement obligation was thus limited to 17/53rds of all reasonable maintenance costs incurred and real property taxes assessed on the servient tenement before Catalina's improvement, "subject to increases thereafter" by the county tax assessor.

The court then found both parties in breach of the Easement. The court held Catalina interfered with MBC's easement rights by partially paying for lost use during construction. On the other hand, the court found MBC in breach of its reimbursement obligations for failing to pay Catalina's invoices during the applicable statute of limitations.

In a judgment jointly filed by the parties on June 7, 2022, the court entered declaratory judgment in favor of MBC as provided in the statement of decision. The court entered judgment in favor of the parties on their breach of easement claims ($75,905 to MBC; $4,073.84 to Catalina) and enjoined Catalina from taking any acts preventing MBC from accessing the servient tenement for its 17 parking spaces. Catalina timely appealed.

## DISCUSSION

### A. Waiver and Forfeiture

Catalina expends a considerable portion of its oversized appellate briefs arguing issues not properly raised below. These contentions identify alleged errors by the trial court in failing to consider (1) the underlying validity of the Easement; (2) the nature of the Easement itself as appurtenant or in gross; and (3) the effect of subsequent transfers, constructive notice laws, and new evidence not introduced at trial. We decline to consider

8

these contentions, which we hereinafter refer to as Catalina's "new issues."

### 1. *Additional Background*

As discussed, the parties never raised the new issues in their trial briefs, at trial, or in post-trial filings. At the beginning of trial, Catalina urged the trial court to interpret the Easement strictly. Counsel argued as follows: "[W]e believe that your honor only has to look at the language of this document to interpret its meaning. We don't have to go into the intent of the parties who drafted it. We believe the language is clear and explicit, and is not subject to ambiguity."

In the event the trial court found an ambiguity in the Easement language, Catalina urged the court could look at a 1993 easement agreement executed by the original grantees for seven parking spaces. In that agreement, Catalina argued, "the parties agreed that the dominant tenement is responsible for 17/53rds of all real property taxes levied against the real property. And in that same document . . . the grantee acknowledged that the easement for 7 parking spaces was terminable by the grantor if the grantee failed to pay its share of those taxes."[4] By "extending the obligation many many years" without limiting the reimbursement obligation to the servient tenement owner for real property taxes, Catalina argued the

---

[4] The 1993 agreement provides: "Grantee acknowledges that, pursuant to the 1978 Grant of Easement, Grantor [(the Latts)] has agreed to pay 17/53rds of all reasonable maintenance costs incurred, including cleaning, restriping and resurfacing and all real property taxes levied against the real property described as [the servient tenement]. Grantee [(non-parties San J. and Jun Bun Yu)] hereby agrees to pay 7/17ths of Grantor's Parking Area Expenses."

9

original grantees understood their reimbursement obligation was unconditional.[5]

Also at trial, Catalina affirmed its status and that of MBC as successors in interest to the Easement while disavowing M&C's rights as successor. Catalina's trial counsel argued, "I don't have an objection to stipulating that the parties to this lawsuit are successors in interest under the various easement documents." Counsel then explained, "We don't—my client does not admit to the validity of the subeasement agreement between [MBC and M&C], but I do acknowledge that the document exists." The court responded, "You don't accept the validity of which easement agreement? The [1993 agreement]?" Catalina responded, "Yes." Counsel for Catalina then made clear that while he contested the 1993 subeasement, he would "stipulate that [his] client, [Catalina], and MBC . . . , are successors in interest on the . . . [original] Easement." The court accepted the stipulation.

In its statement of decision, the trial court accepted "the parties' stipulation that MBC is successor-in-interest to the [o]riginal [g]rantees and that [ ] Catalina is successor-in-interest to the [o]riginal [g]rantor." The court made clear that its "interpretation of the Grant . . . shall govern the rights and

---

[5] Catalina questioned this argument later in its closing briefs, accusing MBC of asking the court "to go back in time, get into the minds of the drafters, and change the language of the agreement to reflect what Plaintiffs believe the drafters *must have* intended[ ] rather than what they actually expressed in the agreement."

10

[obligations]" of both parties.  Catalina did not object to these statements in the court's decision.

2.      *Catalina Waived and Forfeited the New Issues it Raises on Appeal*

It is a "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  To meet this burden, an appellant must summarize all significant evidence in the record with appropriate record citations and supporting legal authority.  (Rule 8.204(a)(1)(C), 8.204(a)(2)(C); *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)  Appellate briefs may not raise arguments supported by facts outside the record or improperly included in the record.  (*Citizens Opposing a Dangerous Environment v. County of Kern* (2014) 228 Cal.App.4th 360, 666, fn. 8; see *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625 [such arguments "'will be disregarded by this court on appeal'"].)

As a necessary corollary, an appellant may not raise a new argument or legal theory on appeal.  (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)  "'"This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." [Citation.]  "New theories of defense, just like new theories of liability, may not be asserted for the first time on appeal."' [Citation.]" (*Ibid.*)  This rule precludes arguments not adequately pursued in the trial court (*Mendoza v. Trans Valley Transport*

11

(2022) 75 Cal.App.5th 748, 768–770; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 379), claims of error invited by an appellant's conduct (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403; *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000), and alleged omissions or ambiguities in a statement of decision not brought to the trial court's attention for correction (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134; *Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 936).

Catalina waived its right to raise the new issues on appeal. The sole member and owner of Catalina testified that it "provided an easement" as the "servient tenement" for parking spaces to MBC, which was "the dominant tenement." In its closing briefs, Catalina acknowledged, "The Grant of Easement permits MBC to use 17 of a total of 53 parking spaces," and its trial arguments were tailored to this very premise. By accepting the Easement as valid and using it to pursue its own claims and defenses, Catalina cannot now question its validity or its binding effect on the parties through constructive notice laws, subsequent conveyances and conduct, or the character of the easement as appurtenant or in gross. Catalina has waived the new issues raised on appeal. (See *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166 ["an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal"]; accord, *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 (*Doers*).)

Catalina has also forfeited the new issues by failing to assert them in the trial court. By pursuing a specific issue on the scope of MBC's reimbursement obligations under the Easement, Catalina cannot now "'change this theory for purpose of review on

12

appeal.' [Citation.]" (*Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 392 ["This is the doctrine of 'the theory on which the case was tried' or 'the theory of trial' and is a well established rule of appellate practice"].) The entire premise on which Catalina relied below was the existence and validity of the Easement when seeking judgment against MBC; it cannot now disavow the Easement on appeal.

Catalina contends it properly questioned the validity of the Easement below by asserting a boilerplate defense, the failure to state a cause of action, in its answer. Catalina alleged no facts or arguments to support this defense. The conclusory defense provided no notice of the new theories Catalina attempts to tether to it on appeal. The defense does not serve as a proper basis for raising the new issues. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 ["This isolated utterance, . . . is not sufficient to preserve the issue for appeal" if later abandoned at trial].) "It is the settled rule that even though a complaint is defective in some particular, if the case is tried on the theory that it is sufficient and evidence accordingly is received without objection, the unsuccessful party cannot later effectively contest the sufficiency of the pleading." (*McClure v. Donovan* (1949) 33 Cal.2d 717, 731.)

At trial, Catalina did contest the validity of an agreement purporting to convey easement rights, but that argument concerned only the "subeasement" with M&C, not the Easement or the parties' rights thereunder. We also reject Catalina's contention it raised the effect of constructive notice laws. Catalina did not argue, as it does on appeal, that the recorded documents modified the Easement from appurtenant to in gross.

13

In addition, many of the new issues rely on evidence outside the trial and appellate record. "Factual matters that are not part of the record will not be considered on appeal and should not be referred to in the briefs." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102, fn. 3.) When discussing the effect of constructive notice laws, Catalina cites various documents attached to a request to take judicial notice and motion to take additional evidence on appeal. To the extent these documents are not properly part of the appellate record, we decline to consider them.[6]

Catalina also relies on facts occurring after rendition of judgment. (See *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 [reviewing courts are limited to considering matters at the time of judgment, which "preserves an orderly system of appellate procedure by preventing litigants from circumventing the normal sequence of litigation"].) Catalina refers to another grant deed, which it concedes "was not an exhibit at trial and was recorded long after the judgment was entered in this case." Catalina relies on this deed to request a

_____

[6] By prior order, we denied Catalina's motion to introduce nine recorded "real property records" as additional evidence on appeal. (Code Civ. Proc., § 909; Cal. Rules of Court, rule 8.252(c).) In its motion, Catalina averred it "did not produce [the additional evidence] at trial because [it] believed that there was sufficient documentary evidence admitted on the material issues and that the additional evidence was either mistakenly overlooked or considered cumulative. In hindsight, the additional evidence would have been further corroborative on the determinations necessary for the full adjudication of the causes of action between the parties." (See *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 605 ["no exceptional circumstances exist to justify making factual determinations" on appeal if "the additional evidence could have been submitted timely but was not"].)

"more complete and more modified" judgment. This document was attached to its request for judicial notice, which this court previously granted. Despite entering that order, we retain discretion to disregard matters not properly brought before the trial court. (*Doers*, *supra*, 23 Cal.3d at p. 184.) We exercise that discretion here.

Finally, several new issues are unsupported by legal authorities, legal analysis, and/or the appellate record. No legal analysis is provided on the alleged failure of the trial court to consider extrinsic evidence or Catalina's request for a "de novo modification" of the judgment. Catalina's opening brief provides an insufficient discussion of the law on the nature of appurtenant or in gross easements, or the effect of subsequent transfers on owners of servient and dominant tenements. These failures forfeit the issues on appeal. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721; accord, *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["[w]e are not required to examine undeveloped claims or to supply arguments for the litigants"].)

In light of the foregoing reasons why it would be unjust to permit Catalina to pursue issues that were never raised, tried, and decided in the trial court, we decline to consider them on appeal.

## B.    Scope of MBC's Real Property Tax Reimbursement Obligations

The single issue left for our consideration is whether the Easement requires MBC to pay for a share of any real property taxes levied against the servient tenement due to Catalina's voluntary improvements. We conclude that it does not.

15

1.    *Governing Principles*

"An easement is an incorporeal interest in the land of another which gives its owner the right to use another's property or to prevent the use of property by its owner.  [Citation.]  The land to which the easement attaches is called the dominant tenement; the land to which the burden or servitude is imposed is called the servient tenement.  [Citations.]" (*Moylan v. Dykes* (1986) 181 Cal.App.3d 561, 568 (*Moylan*), fn. omitted; see Civ. Code, § 803.)

Easements are classified as either appurtenant or in gross. (Civ. Code, §§ 801, 802.)  The distinction between easements appurtenant and easements in gross "arises when the owner of an easement conveys his property.  The conveyance of the dominant tenement transfers all appurtenant easements to the grantee, even though the easements are not specifically mentioned in the deed.  [Citation.]  An easement in gross, unlike an appurtenant easement, is merely a personal right to use the land of another.  [Citation.]  It does not pass with the land." (*Moylan*, *supra*, 181 Cal.App.3d at p. 568.)  Determining whether an easement is appurtenant or in gross "is made by reference to the instrument creating it."  (*Ibid.*)

A grant of easement is "interpreted in like manner with contracts in general," subject to the same principles.  (Civ. Code, § 1066; accord, *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 521.)  Our Supreme Court articulated many of these principles long ago:

> "It is a primary rule of interpretation that contracts must be construed as a whole[,] that is, from their four corners, and the intention of the parties is to be collected from the entire instrument

16

and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect. [Citation.] . . . While general or limited terms may be restrained by particular recitals, each contract, of necessity, must be construed according to its meaning, and no rigid rules of construction can be applied that will do violence to the intention of the parties. The problem is not what the separate parts of the contract may mean, but rather what the contract means as a whole. The separate parts have little weight when compared with the contract in its entirety." (*Hunt v. United Bank & Trust Co.* (1930) 210 Cal. 108, 115; accord, Civ. Code, §§ 1067–1068, 1636–1649.)

In accordance with these principles, if a grant of easement is "clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired. [Citations.] If the language is ambiguous, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonably susceptible." (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 (*Scruby*).)

We independently review a written instrument based solely on its terms without extrinsic evidence or where there is no conflict in the evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866.) Not entirely absolved of our duty to interpret an instrument, we must however "determine that the

17

trial court's interpretation is erroneous before [we] may properly reverse a judgment."  (*Id.* at p. 866.)

### 2.    *Analysis*

With these general principles in mind, we turn to the scope of MBC's reimbursement obligations to Catalina as successors in interest of the Easement.  After construing the Easement as a whole, the trial court held it did not impose responsibility on MBC for payment of increased property taxes caused by improvements by the servient tenement owner.

In our independent review of the Easement, we agree with this interpretation.  The Easement secures the grantor's right to improve the servient tenement on the condition the grantees bear no responsibility for any "*incremental cost per space incurred by reason of the new improvements.*"  (Italics added.)  Paragraph eight does not define term "incremental cost per space."  To ascertain this meaning, we must look for other uses of the term "cost per space" or "cost" in the Easement. "Our Supreme Court has long followed the 'same meaning rule' in the construction of contracts.  'Words used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another.  [Citations.]' [Citations.]  Similarly, while most words, when considered in isolation, may have more than one definition or usage, in construing a contract the court's function is not merely to import all of the possible definitions or even the broadest definition, but to glean the meaning of the words *from the context and usage of the words in the contract itself.* [Citation.]"  (*Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1069–1070.)

Properly read in context, the Easement uses the term "costs" to describe both reasonable maintenance costs *and* real property taxes.  Paragraph six refers to "costs" proportionately borne by the grantees as including all "reasonable maintenance costs incurred, . . . *and* all real property taxes levied against the real property . . . ."  (Italics added.)  As the Easement uses the term "costs" to cover maintenance and taxes in paragraph six, these charges fall within the exclusion set forth in paragraph eight for "[a]ny incremental cost per space incurred by reason of the new improvements."

This construction comports with the same meaning rule and other maxims of construction, including *noscitur a sociis* ("'literally, "it is known from its associates"'") on which Catalina relies, and *ejusdem generis* ("'literally, "of the same kind"'"). (*Gateway Community Charters v. Spiess* (2017) 9 Cal.App.5th 499, 504 (*Spiess*); *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 475–476 ["the same word used in an instrument is generally given the same meaning unless the [instrument] indicates otherwise"].)  "'*Noscitur a sociis* . . . means that a word may be defined by its accompanying words and phrases, since "ordinarily the coupling of words denotes an intention that they should be understood in the same general sense."  [Citation.]  *Ejusdem generis* . . . means that where general words follow specific words, or specific words follow general words . . . , the general words are construed to embrace only things similar in nature to those enumerated by the specific words.'  [Citation.]"  (*Spiess, supra*, at p. 504.)

As discussed, the words accompanying the general term "costs" in paragraphs six and eight embrace both maintenance costs and real property taxes.  Paragraph eight provides further

clarity on this point by limiting the original grantees' reimbursement responsibility "*only* for the same type[ ] of reasonable maintenance costs as would be incurred in connection with the parking lot as it is as of the date of this Grant of Easement."  (Italics added.)

Catalina provides various arguments challenging this construction of the Easement, none of which we find persuasive.

Catalina first contends the trial court improperly construed other provisions in the Easement, considering the Easement "as a whole," to determine the scope of MBC's reimbursement obligations.  This approach is not only appropriate; it is required. (See *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265; *Ajax Magnolia One Corp. v. Southern Cal. Edison Co.* (1959) 167 Cal.App.2d 743, 748–749 [court should consider "the entire" easement in construing its scope]; see also Civ. Code, § 1650 ["Particular clauses of a contract are subordinate to its general intent"].)

Catalina next contends the court failed to consider extrinsic evidence admitted at trial to show the original grantees (the Latts) subsequently changed or reaffirmed "the character of the easement" from appurtenant to in gross.[7]  As discussed, Catalina waived this argument by failing to raise it below.  (See *WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710 [party intending to use extrinsic or parol evidence must first argue the language of the contract "is 'reasonably susceptible' to the

---

[7]    As discussed, the trial court did consider extrinsic evidence on the issue Catalina raised concerning the validity of a subeasement. The trial court was not asked to, and therefore did not consider, extrinsic evidence on the issue of whether the Easement was (or could be) changed in character from appurtenant to in gross because this issue was not raised.

interpretation urged"].) The argument also fails to address the express declaration in the Easement that it is "appurtenant to the [d]ominant [t]enement." As Catalina itself acknowledges, "evidence cannot be admitted to show intention independent of the instrument." (Citing *Barnhart Aircraft, Inc. v. Preson* (1931) 212 Cal. 19, 22; *Sass v. Hank* (1951) 108 Cal.App.2d 207, 214, 238; see also *Scruby*, *supra*, 37 Cal.App.4th at p. 702; Civ. Code, § 806.)

Finally, Catalina contends the court erred by interpreting the Easement "in favor of the grantee" (Civ. Code, § 1069), and pursuant to the general rule an "owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." (*City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 579.) The trial court invoked these rules when ascertaining the reasonable contemplation of the original parties.

As we have discussed, our review of the language of the Easement itself shows that the costs excluded from MBC's obligations included real estate taxes attributable to Catalina's improvements. "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)[8] Thus, even if we were to assume the trial court erred

---

[8] Catalina's reply brief purports to raise several new interpretation principles and arguments in its reply brief. Absent any showing as to why it elected to introduce these new principles, we decline to consider them. (See *Mijares v. Orange County Employees' Retirement System* (2019) 32 Cal.App.5th 316, 332, fn. 3 [absent good

21

by interpreting the Easement in favor of the grantee, it would be immaterial because our independent review has yielded the same decision reached by the trial court.

In sum, we conclude the Easement did not impose on the original grantees (or any successor) an obligation to reimburse the original grantor (or any successor) 17/53rds of real property taxes levied against the servient tenement for voluntary improvements by the servient tenement owner.

## DISPOSITION

The judgment is affirmed.  MBC shall recover its costs on appeal.


MORI, J.

We concur:


COLLINS, Acting P. J.


ZUKIN, J.

---

cause, reviewing court need not and should not consider new issues raised for first time in reply brief].)